IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENELDA THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-1841 |
| ) | |
| HAMILTON BEACH/PROTOR-SILEX, INC., ) | Judge McVerry |
| GENERAL ELECTRIC, ) | Magistrate Judge Hay |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION

I.    RECOMMENDATION

It is respectfully submitted that the Defendants' Motion for Sanctions (Dkt. [57]) be granted, which is tantamount to a dismissal of Plaintiff's claims in this action.

II.   REPORT

Renelda Thomas ("Plaintiff") brings this action against Hamilton Beach/Proctor-Silex, Inc. and General Electric ("Defendants") on claims of negligence (Count I), breach of warranty (Count II), strict liability (Count III) and punitive damages (Count IV). More specifically, Plaintiff claims to have been injured on November 25, 2002, by fumes allegedly released from a toaster oven she had purchased at a Wal-Mart store earlier in the month.[1]

Following the instructions accompanying the user's manual for the toaster oven, Plaintiff began the initial start-up procedure by plugging the toaster oven in and turning it on to the directed temperature for what was to be a ten-minute period of time. Almost immediately, she smelled a foul odor emanating from the toaster oven, which caused her to unplug it and move it

---

[1] It appears that the toaster oven was manufactured by Join-One Industrial Limited of Taipei, Taiwan and was manufactured in Guang Dong, China. Plaintiff's Brief in Reply to Defendants' Brief in support of Motion for Sanctions ("Pl. Br."), Exh. 1, Answer to Interrogatory 3 (Dkt. [60]).

to the basement where she plugged it in, turned it back on and went upstairs. She again smelled foul odors emanating from the toaster oven, returned to the basement and unplugged the oven.

As a result of her exposure to these odors, which by her own estimation lasted less than ten minutes, Plaintiff alleges that she "suffered severe and grievous bodily injuries, including, but not limited to[:] cancer, Reactive Airways Dysfunction Syndrome (RADS), a severe and rapid deterioration of the immun[e] system, red spots on her throat, bronchitis, sores around or in her mouth and nose and/or around or below her eyes, overall muscle and body weakness, fibromyalgia, sleeplessness, lack of appetite, headaches, sinus problems, sore throat, hoarseness, a recurrent productive cough, and depression, after being exposed to the chemicals and/or fumes, toxic or otherwise, which were emitted from the toaster oven during the initial start-up procedure in her home." Pl. Br., p. 3 (Dkt. [60]).

*Procedural History*

Plaintiff, proceeding *pro se*, initiated suit against Defendant, Hamilton Beach/Proctor Silex, Inc., on November 4, 2004, by filing a Praecipe for Writ of Summons in the Court of Common Pleas of Fayette County, Pennsylvania. On November 30, 2004, a Rule to File Complaint was served on Plaintiff. On December 3, 2004, Plaintiff filed her complaint in state court. Hamilton Beach/Proctor Silex, Inc. then removed the action to federal district court on the basis of diversity.[2]

Thereafter, the parties were given four months, i.e., until July 14, 2005, to complete discovery. Plaintiff subsequently moved to extend discovery and the court granted the parties until October 14, 2005, to complete discovery. Discovery was extended on several more occasions to January 27, 2006, then to April 6, 2006 (following the entry of counsel's appearance on Plaintiff's behalf on November 17, 2005), and then again to September 15, 2006. On July 13,

---

[2] See 28 U.S.C. § 1332; Notice of Removal, ¶ 5 (Dkt. [1]).

2006, Plaintiff filed her Amended Complaint (to be precise, Second Amended Complaint), naming Hamilton Beach/Proctor Silex, Inc. and General Electric as defendants. Thereafter, Plaintiff was again granted an enlargement of discovery, until January 5, 2007.

On January 3, 2007, Defendants moved to compel, *inter alia*, the identity of the alleged offending substance and the production of expert reports from Plaintiff. According to Defendants, they had previously served discovery on Plaintiff asking her to identify the specific substance, chemical or toxin contained in the toaster oven that she contends caused her injuries and to identify all witnesses, including experts, who could establish that the substance, chemical or toxin caused her injuries. Defendants also requested the production of all documents supporting these contentions. In response, Plaintiff sought a twelve-day enlargement of time to obtain her expert reports and to supplement her previous answers to Defendants' discovery requests. The court granted the Defendants' motion to compel and accorded Plaintiff a nineteen-day enlargement of time, i.e., until January 24, 2007, to identify the substance, toxin or chemical claimed to have caused her injuries and to produce her expert reports.

Presently before the court is Defendants' Motion for Sanctions, filed on January 26, 2007. Defendants ask the court to dismiss with prejudice Plaintiff's claims since she has failed to respond to the court's order that she identify the toxin or chemical she claims caused her injuries, an element of proof for which she bears the burden at trial. Alternatively, Defendants request that Plaintiff be precluded from offering evidence that any specific substance was emitted from the subject toaster when Plaintiff used it on November 25, 2002, and that Plaintiff be precluded from calling expert witnesses who either have not disclosed the substance and basis of their opinions or have not offered opinions on causation to a reasonable degree of medical certainty.

*Discussion*

Rule 37(b)(2)(B) of the federal Rules of Civil Procedure authorizes the trial court to sanction a party's failure to comply with a discovery order by "prohibiting that party from introducing designated matters into evidence." As the Third Circuit has noted, "[a]lthough the exclusion of evidence for violation of a discovery order is an 'extreme sanction,' " the trial court's decision to do so "will not be disturbed on appeal absent a clear abuse of discretion." In re TMI Litigation, 193 F.3d 613, 721 (3d Cir. 1999)(internal citations omitted). "Exclusion under Rule 37(b)(2)(B) is particularly extreme when the sanction is tantamount to dismissing the claim." Ware v. Rodale Press, Inc., 322 F.3d 218, 221 (3d Cir. 2003). Where, as here, "precluding the evidence as a discovery sanction would be equivalent to a dismissal of the case, a district court should exercise caution." Ware Communications, Inc. v. Rodale Press, Inc., 2002 WL 89604, at *2 (E.D.Pa. Jan. 23, 2002)(citing Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 867-68 (3d Cir. 1984)). As required by Poulis, certain factors "should be weighed by the district courts in order to assure that the 'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited." 747 F.2d at 870. The so-called "Poulis factors" are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Id. at 868.[3]

*1. Extent of Plaintiff's Personal Responsibility*

The first Poulis factor requires the court to examine the extent of Plaintiff's personal responsibility for the failure to respond to discovery requests. 747 F.2d at 868. There has been

---

[3]   In Poulis, the plaintiffs failed to answer interrogatories and file their pre-trial statement as ordered. 747 F.2d at 870.

no suggestion that Renelda Thomas is personally responsible for the failure to answer the discovery requests and respond to the court's order. To the extent that the conduct can be attributed to Ms. Thomas's counsel, her "conduct is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel." Poulis, 747 F.2d at 868 (citation omitted). Therefore, this factor is neutral and not dispositive.

*2. Prejudice to the Adversary*

"Prejudice" for purpose of the Poulis analysis does not mean "irremediable harm." Ware, 322 F.3d at 222. "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." Id. Before addressing the resulting prejudice, a review of Plaintiff's burden of proof is necessary.

The law is well established in this Commonwealth[4] that Plaintiff must prove, as a necessary element of her products liability action, a causal connection between the injuries she claimed she sustained and her alleged exposure to a substance released or emitted from the toaster oven, regardless of whether her claim sounds in negligence, strict liability or breach or warranty. See Soldo v. Sandoz Pharmaceuticals Corp., 244 F.Supp.2d 434, 524 (W.D.Pa. 2003); Fabrizi v. Rexall Sundown, Inc., 2004 WL 1202984, at * 5 (W.D.Pa. June 2, 2004); see also generally Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 937 n. 23 (3d Cir. 1999)(in Pennsylvania, "strict liability, negligence, and breach-of-warranty claims ... each requires a proximate connection between the defendants' conduct and the plaintiff['s] injuries")(citations omitted).[5]

---

[4]   Under the doctrine of Erie R.R. v. Tompkins, 304 U.S. 64 (1938), federal courts exercising diversity jurisdiction must apply state law to substantive questions.

[5]   In order to succeed on a claim of negligence, Plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) failure to conform to such standard; (3) a causal connection between the failure to conform and an injury; and (4) actual loss or damage. Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1308-09 (3d

5

In this case, Plaintiff has asserted, *inter alia*, a claim of strict liability based on a failure "to furnish with the product adequate or proper warning of the danger associated with being exposed to and/or inhaling fumes and/or irritants emitted from the toaster oven during the initial start-up procedure." Amended Complaint, ¶ 8(a) (Dkt. [44]). [6] Under Section 402A of the Restatement (Second) of Torts, which has been adopted by the Pennsylvania Supreme Court, Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966), a seller of any product in a defective condition unreasonably dangerous to the user or consumer is subject to liability, under certain circumstances, for physical harm thereby caused. Comment *j* to Section 402A provides that sellers may be required to give directions or warnings as to the use of their products to prevent them from being unreasonably dangerous.

> In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger.

---

Cir. 1995). "Strict liability requires, in substance, only two elements of requisite proof: the need to prove that the product was defective, and the need to prove that the defect was the proximate cause of the plaintiff's injuries." Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 93-94, 337 A.2d 893, 898 (Pa. 1975). In Pennsylvania, an implied warranty of merchantability requires that the goods are of reasonable quality and are fit for the ordinary purpose for which they are sold. See Whitson v. Safeskin Corp., Inc., 313 F.Supp.2d 473, (M.D.Pa. 2004). Finally, a warranty of fitness for a particular purpose requires that the seller had reason to know of the buyer's particular purpose at the time of contracting, that the buyer was relying on the seller's expertise, and that the goods purchased were defective. Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).

[6] Although Plaintiff also alleges in her Amended Complaint design and manufacturing defects, she has not identified any experts or produced any expert reports in support of such claims.

6

Restatement (Second) of Torts, Section 402A, Comment *j*.  In order to establish her failure to warn claim, Plaintiff must prove that the lack of warning rendered the product dangerous and that it was the proximate cause of the injury.  Morris v. Pathmark Corp., 405 Pa.Super. 274, 278, 592 A.2d 331, 333 (Pa. Super. 1991)(finding compulsory nonsuit was proper where, *inter alia*, plaintiff did not identify ingredient in the product that allegedly had caused the injury and demonstrated noting more than an unusual allergic reaction to the product).

As well, in order to prove her case at trial Plaintiff will have to identify and prove what substance she claims caused her harm.  See Heller v. Shaw Industries, Inc., 167 F.3d 146, 153 (3d Cir. 1999)(finding plaintiff "must demonstrate, as part of her *prima facie case*, that [the defendant's] carpet emitted [volatile organic compounds] VOCs into the air; that she inhaled these VOCs; that she has an injury; and that the VOCs were the cause of this injury")(citing In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 860 (3d Cir. 1990); Soldo, 244 F.Supp.2d at 524-525 (finding plaintiff must first establish that the [pharmaceutical drug] is capable of causing the harm alleged (general causation) and then that the product/drug did in fact cause plaintiff harm (specific causation)).

Defendants moved to compel Plaintiff to identify the substance that she claimed was released during the start-up procedure and caused her injuries, and to produce her expert report(s) in support.  This court granted the motion and ordered Plaintiff to identify the alleged offending substance(s) and produce her expert report(s) by January 24, 2007.  Defendants claim that Plaintiff has not complied with this court's order.  In particular, Defendants argue that Plaintiff has failed to identify the harmful substance(s) about which she claims they should have warned her.

In response to Defendants' motion, Plaintiff does not dispute that it is her obligation to prosecute her case and comply with the court's orders.  Rather, she first argues that she *has*

identified the substances that were in or on the subject toaster oven that caused her injuries. Plaintiff refers the court to her Supplemental Answers to Defendant Hamilton Beach/Proctor Silex, Inc.'s Interrogatories, which provide, in pertinent part, as follows.

> 1. Identify the specific chemical, toxin and/or substance in or on the subject toaster oven which you contend caused or is the source of the toxic fumes to which you were exposed.
>
> **ANSWER:**
>
> Plaintiff refers Defendant to its Answers to Interrogatories and Responses to Request for Production of Documents previously provided to her as they list the various chemicals, toxins and/or substances associated with the subject toaster oven.

Motion to Compel Expert Reports ("Motion to Compel"), Exh. B, pp. 3-4 (Dkt. [49-3]). Additionally, Plaintiff refers the court to substances she culled from documents provided to her in discovery that were used in the manufacturing, assembling, cleaning and shipping of the subject toaster oven, including, *inter alia*,

> Begreasing agent (KH-501), consisting of phosphoric acid salt; Degreasing agent (KH-501B), a second nitrate; stretch oil; petroleum hydrocarbons; cleansing solvent, containing Octylphenol, Polyoxyethylene, Sodiumlaurethsulfate, Polyoxyethethylene Glycol Oleyl Ether; Organpolysiloxane mixture; Guoguang oil; HX-398 oil removing solution, containing hazardous material of mineral oil mist; Interpon powder coating, with components 1, 3, 6 Triglycityl-Isocyanurate (TGIC), with risks of being toxic by inhalation; adhesive, consisting of Shin Etsu silicone, named KE-45-W, having one component of silicone rubber compound, composed of a mixture of organopolysiloxane, having a potential health effect of drowsiness, injury to the blood and liver, and irritation to the eyes, nose and throat from inhalation and/or vapor over-exposure and with possible Methyl Ethylketoxime (MEKO), a decomposition product that produced liver carcinomas in mice and having an uncertain relevance to humans; Polyethylane plastic bags; Alkalescence, with the dangerous material composition of caustic soda; Incoloy 840, Nickel-alloy and nickel, which is a known sensitizer and may produce allergic reactions; and Electrolyte Magnesium Oxide (MGO).

Pl. Br., p. 5 (Dkt. [60]); see also id., pp. 5-7. Additionally, Plaintiff points out that she advised Defendants on December 26, 2006:

> I would note that although I do not have my expert report in hand at this moment and cannot list the precise chemical at issue at this time, whatever the substance

8

      was that caused Ms. Thomas' injuries would have already been provided to you
      by your own client, as the only information that the Plaintiff has at this time is
      what the Defendant has provided us.

Motion to Compel, Exh. B, p. 1 (Dkt. [49-3]); see also id. at pp. 3-4 ("Plaintiff further answers [Interrogatory No. 1] that her expert report(s) will contain more precise information and will be provided to Defendant per the federal Rules of Civil Procedure and the Court's prior orders.").

      Based on the above noted responses, Plaintiff claims that she has complied with the court's order to identify the alleged offending substance. This court is not persuaded. As noted, Plaintiff must prove causation to succeed on her claims at trial. Most assuredly, if Plaintiff is claiming that any or all of the substances involved with the manufacturing, assembling, cleaning and shipping processes caused her harm, she will be required to prove this to be true through expert testimony at trial. As discussed in more detail below, none of the experts' reports offered by Plaintiff in response to this court's order discusses or even mentions any of the above noted substances nor identifies any other substance as having caused Plaintiff's injuries.[7] Thus, it cannot fairly be said that Plaintiff has complied with the court's order to identify the offending substance(s). It appears that Plaintiff misapprehends her burden in this regard.

      In defense of her failure to identify the alleged offending toxin and produce expert reports in support of her claims, Plaintiff argues that her injuries were simply the direct result of inhaling the fumes from the toaster oven, "which is a common-sense issue that does not mandate any expert opinion of causation herein," Pl. Br., p. 10 (Dkt. [60]), nor, apparently, any identification

---

[7]    In her Supplemental Answers to Interrogatories Plaintiff identified four expert witnesses whom she planned to call at trial: Joel C. Ross, M.D., Paul van der Sloot, M.D., Kathi Peters, Ph.D., and Kenneth F. Hardy, Jr., M.D. Given the fact that Plaintiff was required by order of this court to produce *all* expert reports, and it appearing that Plaintiff produced no reports from Drs. Peters and Hardy, we conclude that Plaintiff has no intention of calling these witnesses for any expert testimony.

of the allegedly offending substance.  According to Plaintiff, she is able to meet her burden of causation through her own lay testimony, i.e., she inhaled the fumes and was injured thereby.  Id.

In support of this argument, Plaintiff cites to the cases of Forry v. Gulf Oil Corp., 428 Pa. 334, 237 A.2d 593 (Pa. 1968)[8] and  Smith v. Bell Telephone Co. of Pa., 397 Pa. 134, 153 A.2d 477 (Pa. 1959).  Smith rejected the rule that "where plaintiff's case is based on circumstantial evidence and inferences to be drawn therefrom, such evidence must be so conclusive as to exclude any other reasonable inference inconsistent therewith," 397 Pa. at 136, 153 A.2d at 479, in favor of the "reasonable inference" rule, that is, "the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached.  Id. at 138, 479-480.  As demonstrated in the Forry case, however, the "reasonable inference" rule is inapplicable where there is no evidence from which any reasonable inference of defendant's

---

[8]  Forry simply does not provide Plaintiff any support.  In that case, Thomas Wagner purchased a new snow tire from George Keller.  Keller mounted the tire on the wheel of Wagner's motor vehicle.  The next day, after being informed by a passing motorist that the wheel was wobbling, Thomas drove to a service station operated by Marlin Forry, who proceeded to attempt to remedy the situation.  Forry removed the tire from the wheel, performed some other procedures and then began to inflate the tire when it exploded, causing Forry serious injury.  At trial, a compulsory nonsuit was entered and Forry appealed.  Crucial to Forry's case  was proof that the tire was defective when it left the manufacturer's hands *and* proof that Keller negligently mounted the tire.  At trial, the expert testified that excessive mechanical force had been applied to the tire sufficient to create a dent which weakened the wire unit of the tire which in turn reduced the strength of the tire's bead structure and, thus, posed a danger to persons working on the tire.  Forry urged that purely from consideration of the proven series of events that occurred, the jury could infer that it was Keller who had used the excessive mechanical force in mounting the tire in the first instance.  The Pennsylvania Supreme Court found, however, that the dent which led the expert to conclude that excessive  mechanical force had been applied was observed by the expert six and one-half years after the accident and after two individuals other than Keller had worked on or handled the tire.  The expert could not state who caused the dent.  The record was silent as to what Keller had done at all.  The court then observed,  "[t]here is no evidence, lay or expert, as to when this dent or depression was caused or by whom."  428 Pa. at 347.  Accordingly, there was no evidence from which a jury could draw a reasonable inference that it was Keller who caused the dent.

10

negligence can be drawn.  428 Pa. at 347, 237 A.2d at 600.  Such is the case here, as the following demonstrates.

"Under Pennsylvania law, unequivocal medical testimony is necessary to establish the causal connection in cases where there is no obvious causal relationship between the accident and the injury."  Fabrizi, 2004 WL 1202984, at * 5 (citing  In re Paoli R.R. Yards PCB Litigation, 2000WL 1279922, at *2 (E.D.Pa.  Sept. 6, 2000) and Niklaus v. Vivadent, Inc., U.S.A., 767 F.Supp. 94, 96 (M.D.Pa.  1991), aff'd, 986 F.2d 1409 (3d Cir.  1993)).  "This standard corresponds with Pennsylvania's requirement that the plaintiff's injury 'did, with a reasonable degree of medical certainty, [flow] from the [complained of] act.'"  Id.  (quoting Niklaus, supra at 96).

An "obvious causal relationship" is said to exist "when the injury is either an 'immediate and direct' or the 'natural and probable' result of the complained of act.  The injury and the act must be so closely connected that a lay person could diagnose the causal connection." Niklaus, supra (citing Lattanze v. Silverstrini, 302 Pa.Super. 217, 223, 448 A.2d 605, 608 (1982)).  Stated differently, an "obvious causal relationship" is said to exist  where the injury complained of is the type one would reasonably expect to result from the incident in question.  Id.

Here, however, it cannot be seriously argued that the various and complex injuries complained of, i.e., cancer, Reactive Airways Dysfunction Syndrome (RADS), a severe and rapid deterioration of the immun[e] system, red spots on Plaintiff's throat, bronchitis, sores around or in her mouth and nose and/or around or below her eyes, overall muscle and body weakness, fibromyalgia, sleeplessness, lack of appetite, headaches, sinus problems, sore throat, hoarseness, a recurrent productive cough, and depression, could reasonably be expected to result from inhaling, for a few minutes, room air that contained a foul smelling odor produced by some unidentified substance(s) in or on the subject toaster oven.  Accordingly, expert medical

testimony is required to establish the requisite causal connection between the (unidentified) substances/chemicals and her cancer, RADS, fibromyalgia, and/or any of the other illnesses or injuries Plaintiff claims to have suffered.

None of the medical experts, however, has identified the alleged harmful substance(s) and, thus, not surprisingly, none has reported a causal connection in support of Plaintiff's claims of negligence, strict liability and breach of warranty.

Paul van der Sloot, M.D., an otolaryngologist who has been treating Plaintiff for tonsillar cancer, opined as follows.

> As to the causation of her tonsillar cancer, I can only tell you what I think are the typical causes for tonsillar cancer, squamous cell in nature. The typical causes are smoking and alcohol consumption, although Ms. Thomas does not fit into either of those categories. In terms of the chemicals related to the toaster oven noted by Ms. Thomas, it is impossible for me to say at this point whether or not this contributed to her cancer development in her case.

Id. In other words, having apparently noted the information produced by the Defendants concerning the chemicals involved in the manufacturing, assembling, cleaning and shipping of the toaster oven, Dr. van der Sloot nevertheless could not state to a reasonable degree of medical certainty that the chemicals were of a kind capable of producing the injuries complained of nor that they did, in fact, cause the injuries in this case.

George E. Snider, Jr., M.D., reported that he could not state the length of time Ms. Thomas was exposed to "the supposedly toxic fumes from the toaster oven." Id., Exh. 3. He offered no opinion as to the identity of the toxin and, therefore, obviously could not comment on whether such a toxin was capable of producing the injuries Plaintiff alleges she sustained and indeed did cause those injuries. The remainder of Dr. Snider's report, which contains speculation about the length of time Plaintiff was exposed to the odors and the possible impact on her as a result, simply does not address the requisite causation element.

Joel C. Ross, M.D., a physician who is board certified in ear, nose and throat and head and neck surgery, opined that "Ms. Thomas suffered a traumatic induced inhalation insult consisting of alleged foul smelling super heated air and airborne chemicals which aggravated a pre-existing upper airway problem. The reaction occurred as a result of an alleged defective toaster, which burned improperly and gave off the reaction above. Such injuries are ordinarily self-limited in time." Motion to Compel, Exh. 2 (Dkt. [57]). Notably, Dr. Ross does not identify the specific chemical(s) and, therefore, does not address general or specific causation.[9]

Plaintiff argues that Dr. Ross cannot identify the precise chemical(s) because the substance was consumed in the start-up process. This argument is unavailing. Defendants identified for Plaintiff the substances or chemicals used in the manufacturing, assembling, cleaning and shipping of the product. Once Plaintiff received this information she had sufficient facts upon which to conduct her investigation, by having experts review that information and/or conduct tests to determine what substance was released that could cause the harm alleged and,

---

[9] None of the experts' "reports" produced by the Plaintiff meets the requirements set forth in Rule 26(a)(2)(B) of the federal Rules of Civil Procedure, which provides that an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Further, "[t]he test of a report is whether it [is] sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." Dunkin' Donuts, Inc. v. Patel, 174 F.Supp.2d 202, 211 (D.N.J. 2001)(internal quotation marks and citation omitted). None of Plaintiff's experts' reports meets the test. This includes the letter from Hugh L. Davidson, Ph.D., P.E., which simply reports that he contacted Harry A. Trout, CIH, an industrial hygienist, as to the value of further testing the subject toaster oven and Trout's response to Davidson.

whether, in fact, the substance did cause the harm, which is her burden. See Heller, 167 F.3d at 153.

Obviously, a defendant is entitled to challenge a plaintiff's claims and evidence. Equally obvious here, however, is the fact that because Plaintiff has not provided the Defendants with complete responses to their discovery requests relating to causation, Defendants are and have been prejudiced in their ability to pursue any meaningful - - and cost-efficient - - investigation of Plaintiff's claims in order to prepare their defense of this case. Therefore, this factor weighs in favor of precluding the evidence.

*3. History of Dilatoriness and*

*4. Willful and Bad Faith Conduct*

There does not appear to have been any significant history of dilatoriness or any willful and bad faith conduct in this case. Under these circumstances, these two factors are neutral and not dispositive. However, "[e]ach [Poulis] factor need not be satisfied for the trial court to dismiss a claim." Ware, 322 F.3d at 221 (citation omitted).

*5. Effectiveness of Alternative Sanctions*

As an alternative to the exclusion of evidence, which is tantamount to dismissal of the action in this case, the court could re-open discovery. This solution would be unjustified and, likely, ineffective.

The discovery period accorded in this case was exceptional, i.e., nearly two years. Now, having reached the end of that process, Plaintiff is not in a position to prosecute her case because she has not established an essential element of her claims, i.e., causation. Providing additional time for discovery would burden Defendants with additional costs and delays in what is already a two and one-half year old case. Plaintiff has been afforded ample opportunity to prove her case but has not done so. Any re-opening of discovery would be unjustified. See Fabrizi, 2004 WL

1202984, at * 12.  Moreover, it is not at all clear that even with an additional discovery period Plaintiff would be able to establish the requisite causation.  Therefore, this factor weighs in favor of excluding the evidence.

  *6. Meritoriousness of Claim or Defense*

  In Poulis, the Third Circuit stated that "[a] claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense."  747 F.2d at 869-70.  For the reasons already discussed, Defendants' claim that Plaintiff has failed to establish an essential element of her case, on which she bears the burden at trial, is compelling.[10]  Therefore, this factor weighs in favor of excluding the evidence.

  In summary, the balance weighs in favor of precluding Plaintiff from offering evidence concerning the substance released from the toaster oven when she used it on November 25, 2002, thereby effectively dismissing Plaintiff's claims.  The court is mindful that the exclusion of evidence is an extreme sanction.  Nevertheless, Plaintiff's utter failure to provide Defendants with the identity of the substance Plaintiff must prove was released from the toaster oven and caused her harm - - the substance about which she claims Defendants should have warned her - - is inexcusable in light of the extensive period provided for discovery in this case.

  In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of

---

[10] As well, it appears that summary judgment would properly be granted under the circumstances. Where a party fails to produce sufficient evidence to establish an element she would be required to prove at trial, summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  However, in light of the present record and this court's recommendation, requiring Defendants to file a motion for summary judgment would not seem to be an efficient use of attorney and judicial resources.

service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                                        Respectfully submitted,

                                                        */s/  Amy Reynolds Hay*
                                                        United States Magistrate Judge

Dated:  11 June, 2007

cc:      Hon.  Terrence F.  McVerry
          United States District Judge

          All counsel of record by Notice of Electronic Filing